**THIRD DIVISION**
**DOYLE, P. J.,**
**HODGES and WATKINS, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**August 23, 2024**

# In the Court of Appeals of Georgia

A24A1018. IN THE INTEREST OF A. E., a child.

DOYLE, Presiding Judge.

The father of A. E. ("the Father") appeals from a juvenile court order granting temporary custody of A. E. to the Fulton County Division of Family and Children Services ("DFCS"). He contends, and DFCS agrees,[1] that the order is not supported by clear and convincing evidence of dependency due to his unfitness as a parent. Based on the record before us, we agree. Therefore, we reverse in part the juvenile court's order finding A. E. dependant as to the Father and remand the case with

---

[1] DFCS concedes that the juvenile court's ruling was unsupported by adequate evidence of parental unfitness. The child's attorney filed an appellate brief in support of the juvenile court's order.

instruction to hold a review hearing under the present circumstances and applicable law in light of the holding herein.

Viewed in the light most favorable to the juvenile court's factual findings,[2] the record, which is not materially disputed, shows that A. E. was born in April 2023 to unwed parents living together. Leading up to A. E.'s birth, the Father attended prenatal care appointments with A. E.'s mother ("the Mother"), and after A. E.'s birth, the Father worked and supported the family financially while the Mother stayed home to care for A. E. The Father engaged in caregiving activities at home in his spare time.

At some point in September 2023, the Mother left A. E. unsupervised while the Father was at work. At that time, the Father became aware and called the police for a welfare check. Police responded and arrested both parents, charging them with reckless conduct and abandonment of a child. Due to the parents' resulting incarceration, A. E. was placed temporarily with DFCS shortly after midnight that night. The parents were ordered to have no contact with each other or A. E. The same

---

[2] See *In the Interest of Z. A.*, 370 Ga. App. 424 (1) (897 SE2d 639) (2024).

month, the court held a preliminary protective hearing at which both parents stipulated that there was probable cause to find that A. E. was dependent.

During this timeframe, after the parents bonded out of jail, the child was returned to the Mother pursuant to a protective order, and the parents had various disputes that culminated in the Mother leaving the residence and leaving A. E. with the Father. The Father made arrangements for his cousin to care for A. E. while he worked, and this arrangement continued with A. E. thriving in the cousin's and Father's care. The Father also provided financial support to the cousin and regularly cared for A. E. when he was not working. It is undisputed that the parents have not reconciled and do not live together, and the Mother did not object to the cousin's care of A. E.[3]

In October 2023, DFCS filed a dependency petition, alleging in part that the parents left A. E. at home unsupervised, and the next day, the Father filed a petition for legitimation. A week later, DFCS amended its dependency petition to strike out the allegation that the Father left the child at home alone without adequate

---

[3] The Mother has since developed a working relationship with the cousin regarding visitation.

supervision, and it added the fact that the Father was at work at the time A. E. was unsupervised.

On November 14, 2023,[4] pursuant to an October hearing on the dependency petition,[5] the juvenile court entered an order provisionally returning custody to the Mother, noting that the no-contact order had been lifted as to both parents with respect to the child. The court also noted that it had continued the matter of the Father's legitimation pending the results of a DNA test, but it listed as a finding of fact that the Father "has failed to legitimate the child," despite his pending petition for legitimation. The court concluded that A. E. was dependent "in that the parents left the child alone without supervision, leaving the child at imminent risk of danger."[6] The court held that eventual return to the home was not contrary to the welfare of the child. It appears that, as a practical matter, A. E. often remained with the Father's cousin due to the Mother's lack of stable housing.

---

[4] The order was signed on November 13 and filed the next morning. It appears that at the hearing the court orally set a hearing date for the legitimation on November 11.

[5] The court returned A. E. to the Mother at the October hearing.

[6] (Emphasis supplied.)

Meanwhile, the court had held a judicial review hearing on November 13, 2023, and also addressed the Father's legitimation petition. It granted the legitimation in an order entered November 17, 2023 , but the court ultimately continued the hearing on the merits of the existing protective order due to the absence of the assigned case worker. But over argument to the contrary by the Father, DFCS, and the child's attorney, the juvenile court entered an order on November 21, 2023 ("Interim Order"),[7] awarding temporary physical and legal custody to DFCS. The Interim Order included the following legal conclusions:

> *The child remains a dependent child as to the father because he has not been granted legal custody of the child and regularly works long hours and cannot consistently supervise his child.* The father does not reside with the child. . . . While the father has been proactive in ensuring the child may stay with a relative, *he does not have custody and is not able to supervise the child the vast majority of the week given his busy work schedule.* Given the specific facts and patterns of behavior in this case — the parents were both arrested and have pending criminal charges for failure to supervise their child, the parents fought in front of the [guardian ad litem ("GAL")] resulting in a safety plan being enacted, the police have again been called out again to the parents' home, and the mother has now accused the father of domestic violence — the Court does not see the status quo as

---

[7] This order was entered nunc pro tunc to November 13, 2023.

tenable or the most productive way to effectuate a resolution of this matter.[8]

The Father filed a timely notice of appeal from this order.[9] During the pendency of the appeal, the juvenile court has entered two review orders that appear in the appellate record: an Order of Disposition and 75-Day Judicial Review (entered January 16, 2024) and a Status Review Hearing Order (entered June 17, 2024). In light of his notice of appeal, the Father objected to the parts of the January 2024 order invoking a case plan listing certain requirements for him. Both subsequent orders list the Father's work schedule as the primary reason he is unable to care for A. E.,[10] and the

---

[8] (Emphasis supplied.)

[9] See *In the Interest of S. W.*, 363 Ga. App. 666, 668-669 (1) (872 SE2d 316) (2022) ("This Court has held that custody orders entered by juvenile courts in dependency proceedings are directly appealable. . . . This includes temporary or interlocutory custody orders issued in dependency proceedings."), citing *In the Interest of S. J.*, 270 Ga. App. 598, 608 (1) (a) (607 SE2d 225) (2004) ("An order within a deprivation proceeding deciding temporary custody of the child is a 'final order,' within the meaning of 5-6-34 (a) (1), from which a direct appeal lies.").

[10] The orders also state that the Father had not completed his case plan services (such as parenting classes and counseling), and the Father had not consistently visited the child. The earlier order also stated that the Father had a negative drug screen.

later order states that the Father is paying monthly support to the child's current placement.

1. *Sufficiency of the evidence to support the transfer of custody to DFCS in the Interim Order*. The Father contends that the Interim Order was not supported by clear and convincing evidence of his parental unfitness. We agree.

Under Georgia law,

> the juvenile court may place a minor child in the protective custody of [DFCS if] the State shows, by clear and convincing evidence, that the child is a dependent child. As relevant here, OCGA § 15-11-2 (22) (A) defines a "dependent child" as a child who, among other things, "[h]as been abused or neglected and is in need of the protection of the court[.]"[11]

As to sufficiency of the evidence supporting removal from a parent's custody, our law has long provided that

> even a temporary loss of custody is not authorized unless there is clear and convincing evidence that [a child is dependent and that] *the dependency resulted from unfitness on the part of the parent that is either intentional or unintentional misconduct resulting in the abuse or neglect of the*

---

[11] (Citations and punctuation omitted.) *In the Interest of A. M. B.*, 361 Ga. App. 551, 555 (a) (864 SE2d 713) (2021).

7

*child or by what is tantamount to physical or mental incapability to care for the child.* A finding of parental unfitness is essential to support an adjudication of present dependency. Where as here, the [child had] already been removed from the parent's custody, the correct inquiry for the juvenile court is whether the [child] would be dependent if returned to the parent's care and control as of the date of the hearing."[12]

Here, at the time of the hearing resulting in the challenged order, the child initially was removed from the home when the parents were put in jail because the Father called police for a welfare check due to his concern that the Mother had left the child unattended while the Father was at work. The decision to call the police reflects no unfitness on the part of the Father; rather, it reflects the opposite — concern for his child and the initiative to seek help. Likewise, it should go without saying that the Father's full-time employment also reflects no unfitness as a parent; it reflects the opposite. So at the outset, when DFCS became involved in this case, the Father's

---

[12] (Citations and punctuation omitted; emphasis supplied.) *In the Interest of Z. A.*, 370 Ga. App. at 426 (2). See also *In re D. H.*, 178 Ga. App. 119, 124 (342 SE2d 367) (1986) (whole court) ("It has been held that to authorize a termination of parental rights, or even a loss of temporary custody by a child's parents, on the basis of deprivation, the deprivation must be shown to have resulted from unfitness on the part of the parent, that is, either intentional or unintentional misconduct resulting in the abuse or neglect of the child or by what is tantamount to physical or mental incapability to care for the child.").

unfitness was not an issue, and DFCS amended its dependency petition to reflect this fact by removing the allegation that the Father caused the child to be unsupervised.

As the case progressed, it became evident that the parents were not getting along, and the GAL witnessed arguing between the parents, and the Mother alleged domestic abuse by the Father. By the time of the hearing, however, the parents had ended their relationship; they were not living together or seeking reunion; and there was no evidence that any alleged domestic abuse had occurred in the presence of the child, was ongoing, or had or would result in harm to the child. In fact, after the Mother left their residence, the Father arranged for the child to be cared for by his cousin due to his work schedule. It is undisputed that the child was thriving in the cousin's care, and at the time of the hearing, the Father was providing financial support for the child and maintaining regular visitation with the child multiple days per week. The Father's beneficial role as a parent was acknowledged by the trial court when it granted the Father's legitimation petition: "he did attend all of the [prenatal] doctor's appointments with the mother[,] . . . he's been the sole financial provider. . . after work, [and] he's been actively involved in her life."

As the hearing concluded, the juvenile court explored whether the parties or the GAL had any concerns regarding continuing the review hearing so that the appropriate case manager could be available. The parties noted that legal custody was with the Mother, who was living in a shelter and did not object to the paternal cousin's temporary physical custody , and the child's attorney requested that the Father be granted provisional custody. The court indicated its preference to give temporary custody to DFCS instead of the Father, explaining: "[T]his is also proof of my problem. . . The mother is in a shelter. She's trying to get back on her feet. The father, he's working. He works until 11 [p.m.] and everything. So, you would want me to give custody back to him[?]" The Father's attorney and the child's attorney responded that arranging for child care outside of the home was typical of working parents. As argued by the child's attorney:

> I mean, he's doing what families do. . . The father . . . doesn't really have the issues. . . [Y]ou don't put a child in the government['s] . . . custody if there was another alternative. DFCS doesn't need to be in control . . . when we have a legal parent. We . . . want fathers to become legitimated and take care of their children . . . and make arrangements when they can't. . . [H]e's doing what we want.

Despite this, the juvenile court transferred temporary custody of A. E. from the Mother to DFCS, stating that DFCS had the authority to maintain the current placement with the paternal cousin, which the court deemed reasonable and implied as preferable with unrestricted visitation by both parents. DFCS sought an explicit clarification by the court as to its "contrary to welfare" finding with respect to the Father, and the court explained:

> The father currently, he was made the legal father today. Given his work schedules, he has been proactive in making arrangements with [A. E.] . . . staying with some relatives. At this point, he does not have custody . . . So, the court will temporarily give custody back to [DFCS.]

On appeal, and based on the juvenile court's oral explanation at the hearing and as memorialized in the legal conclusions in the written order, the Father correctly points out that the juvenile court's decision to transfer custody to DFCS instead of him was predicated largely on an improper factor: he had a job. Outside of that, the court's reference to the Father's pending criminal charge was based on the Father's decision to call police seeking a welfare check on his child while he was at work. There was no further information available about the still-pending criminal proceeding, and there were no allegations of the Father harming the child, abusing drugs or alcohol,

11

or engaging in any ongoing domestic abuse. As pointed out by the Father, DFCS, and the child's attorney, it is axiomatic that working outside of the home is not evidence of parental unfitness, regardless of whether a parent is wed or unwed. Similarly, having an onerous work schedule cannot support a finding that a child's dependency was caused by the parent's unfitness when the working parent makes appropriate arrangements for child care, as was done by the Father in this case. Accordingly, this record fails to support the juvenile court's transfer of custody to DFCS in the Interim Order, and the judgment of deprivation due to the Father's unfitness at that time is reversed.[13]

2. *Effect of subsequent orders in the dependency proceeding.* The Interim Order is challenged in this appeal by both the Father and DFCS, each of which filed briefs compellingly arguing the insufficiency of the evidence to support the temporary award of custody to DFCS in the Interim Order. But despite arguing against a custody award

---

[13] See *In the Interest of A. M. B.*, 361 Ga. App. at 555 (a) ("In making its determination, a juvenile court may consider evidence of past conduct, but the record must contain evidence of present dependency, not merely past or potential future dependency.") (punctuation omitted).

to DFCS at the hearing on the Interim Order,[14] the child's attorney now argues that the Father cannot challenge the Interim Order in light of the two subsequent orders that he did not appeal, which orders essentially maintain the status quo of the Interim Order — custody awarded to DFCS, which temporarily placed A. E. with the cousin who has agreed to provide foster care until the final resolution.[15]

First, we note that none of the parties contend on appeal that the Father's notice of appeal deprived the juvenile court of jurisdiction to continue to review the situation and enter the subsequent orders in the furtherance of the best interest of the child. Likewise, we note that as a practical matter, during the pendency of an appeal, the appropriateness of the juvenile court's temporary order may need to be revisited as a child's circumstances change. In the absence of any challenge to the subsequent orders, we pretermit the effect of the Father's notice of appeal on the juvenile court's

---

[14] At the hearing, the child's attorney requested that temporary custody be given to the Father.

[15] According to the subsequent orders, the cousin apparently does not wish to maintain temporary custody on an ongoing basis but has agreed to continue to provide foster care until permanent resolution.

ability to enter additional review orders temporarily addressing custody as needed pursuant to the Code or to ensure the child's welfare.[16]

Second, with respect to the effect of the subsequent orders, they state that they maintain custody with DFCS in large part due to the same erroneous conclusion regarding the Father's employment, and in essence, they preserve the status quo established in the Interim Order in part on the grounds disapproved of in Division 1. In this particular circumstance, the present appeal is not mooted by the subsequent unappealed orders because they perpetuate the error the Father challenged in this appeal, and the Father has prevailed.[17] Furthermore, the subsequent orders' reliance

---

[16] See, e.g., *In the Interest of T. H.*, 319 Ga. App. 216, 217 (735 SE2d 287) (2012) (noting that after the notice of appeal was filed, the juvenile court "conducted various, standard proceedings in this ongoing deprivation and custody case").

[17] See generally OCGA § 5-6-34 (d) ("For purposes of review by the appellate court, one or more judgments, rulings, or orders by the trial court held to be erroneous on appeal shall not be deemed to have rendered all subsequent proceedings nugatory; but the appellate court shall in all cases review all judgments, rulings, or orders raised on appeal which may affect the proceedings below and which were rendered subsequent to the first judgment, ruling, or order held erroneous."). Compare *In the Interest of T. H.*, 319 Ga. App. at 219 ("[E]ach [subsequent] deprivation order must be supported by clear and convincing evidence that the child at issue is currently deprived, i.e., at the time of the hearing."). In *In the Interest of T. H.*, the mother had stipulated to an allegation of dependency. Here, the Father has not stipulated to the

14

on the Father's lack of participation in a case plan is a collateral consequence stemming from the finding of unfitness in the appealed order;[18] his noncompliance with the plan is tempered by the fact that the Father objected to the court's reliance on the plan, and the plan was put in place due to an erroneous holding as to his parental unfitness. Therefore, based on the record before us, we conclude that the subsequent orders do not render this appeal meaningless.

On remand, the juvenile court is instructed to hold an evidentiary hearing and enter a review order that appropriately accounts for the legal holding in Division 1 as well as the circumstances present after remand.[19] We express no further opinion on

legal conclusion of his unfitness, even if he has not disputed the facts supporting that erroneous legal conclusion.

[18] See *In the Interest of K. P.*, 365 Ga. App. 38, 41 (877 SE2d 289) (2022) (noting collateral consequences as an exception to mootness doctrine: "For example, the preliminary protective order could be taken into consideration by the juvenile court at a later date if [the parent] is involved in a subsequent dependency or termination proceeding.").

[19] See generally *In the Interest of N. C.*, 363 Ga. App. 398, 405 (3) (870 SE2d 569) (2022) ("When determining whether a child is without proper parental care or control [for purposes of dependency], courts must consider factors such as . . . physical, mental, or emotional neglect of the child or evidence of past physical, mental, or emotional neglect by the parent of such child or another child of such parent. In determining whether a child is dependent, consideration of past misconduct is appropriate because the juvenile court is not required to reunite a child with a parent

the Father's conduct subsequent to the Interim Order hearing, which is appropriately evaluated by the juvenile court under the applicable legal standards.

*Judgment reversed in part and case remanded with direction. Hodges and Watkins, JJ., concur.*

---

in order to obtain current evidence of deprivation or neglect. Nevertheless, the record must contain evidence of present dependency, not merely past or potential future dependency.") (citations and punctuation omitted).